**WILENTZ, GOLDMAN & SPITZER, P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095-0958
(732) 636-8000

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**
100 Park Avenue
New York, New York 10017
(212) 661-1100

Counsel for Plaintiff and the Putative Class

**RECEIVED**

**AUG 1 4 2008**

AT 8:30 _4:18_ _P_M·
WILLIAM T. WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------------x
:
DAVID CHAZEN,                                    :
individually and on behalf of all others         :
similarly situated,                              :
:
        Plaintiff,                           :
:
        -against-                            :
:
CONNECTICUT GENERAL LIFE INSURANCE :
CO., CIGNA CORPORATION, and CIGNA    :
HEALTH CORPORATION,                            :
:
        Defendants.                          :
-------------------------------------------------------------x

08-4106
(FSH)

**CLASS ACTION
COMPLAINT**

**JURY TRIAL FOR ALL
CLAIMS SO TRIABLE**

      Plaintiff David Chazen ("Chazen" or "Plaintiff"), residing in Wyckoff, New Jersey,

individually and on behalf of all others similarly situated, to the best of his knowledge,

information and belief, formed after an inquiry reasonable under the circumstances for his Class

Action Complaint (hereinafter "Complaint") asserts the following against Defendants

Connecticut General Life Insurance Co., CIGNA Corporation, and CIGNA Health Corporation

(collectively "CIGNA" or "Defendant").

## SUMMARY OF CLAIMS

1.     Plaintiff David Chazen brings this action as a member of a health insurance plan offered through his employer, which was fully insured and administered by CIGNA during the Class Period (as defined below to include the period from six years before the filing of this Complaint up to the present).  Chazen is not currently insured by CIGNA, although he was when the coverage disputes described herein arose.  Chazen brings his claims against Defendants Connecticut General Life Insurance Company, CIGNA Corporation and CIGNA Health Corporation (collectively "CIGNA" or "Defendants").

2.     As the company that issues, insures and administers these employee benefit plans through which Plaintiff received his insurance, CIGNA is subject to the Employee Retirement Income Security Act of 1974, as amended, ("ERISA") and its governing regulations.  Further, due to the role CIGNA played in administering Chazen's health plan, including by making coverage and benefit decisions, and deciding appeals, CIGNA has assumed the role as a fiduciary under ERISA toward Plaintiff.

3.     CIGNA members and beneficiaries (hereinafter "Members") pay an increased premium for the right to choose to use out-of-network ("ONET") providers for health care services.  CIGNA contracts that it will determine ONET reimbursement, referred to as "Maximum Reimbursable Charge" ("MRC"), as the lesser of the billed charge or "the policy-holder selected percentile of all charges made by providers of such service or supply in the geographic area where it is received." (a concept known in the insurance industry as "usual, customary and reasonable" or "UCR").[1]  CIGNA promised Members that in determining the MRC for a service, consideration may be given to the nature and severity of the condition.

---

[1]     MRC and UCR are used interchangeably herein.

CIGNA states that it uses the Ingenix Prevailing Health Care System Database (the "Ingenix database") to price ONET claims. The Ingenix database fails to comply with the MRC definition in CIGNA's insurance contracts.

4.    In addition, CIGNA failed to disclose adequately to its Members the Ingenix data and the Ingenix methodology underlying its ONET reimbursement decisions, preventing Members from effectively challenging or appealing CIGNA's UCR determinations. Although CIGNA is aware of serious, systemic flaws in the Ingenix database, CIGNA concealed such flaws from its Members. For example, the Ingenix database averages the charges of both physicians and other healthcare providers who are not medical doctors. The Ingenix database fails to consider factors reflecting provider-specific, patient-specific and procedure-specific basis.

5.    Upon information and belief, Plaintiff Chazen's benefits were determined under a CIGNA small employer health plan ("SEHP") in New Jersey. SEHP plans are governed by ERISA and are also subject to a New Jersey SEHP regulation, N.J.A.C. § 11:21-7.13(a) (the "SEHP Regulation"). The New Jersey SEHP Regulation imposes additional requirements beyond those required under ERISA. New Jersey adopted the SEHP Regulation in an effort to ensure that all Members of small employer plans, who were not in a position to negotiate the best benefit packages from insurers, would receive a minimum level of benefits.

6.    The SEHP Regulation specifies, among other things, that the "...carrier shall pay covered charges for medical services on a reasonable and customary basis, or actual charges, and for hospital services, based on actual charges." It requires CIGNA's UCR determinations be equal to or greater than the 80th percentile of the most updated version of the Ingenix database. It also requires CIGNA to pay out-of-network hospital services based on billed charges. In

3

incorporating the Ingenix database into the New Jersey SEHP Regulation, the New Jersey

Regulators were not told of the inherent flaws and inadequacies of the Ingenix database.

CIGNA's reimbursements to Chazen and the Class violated the SEHP Regulation. For members

of the New Jersey small employer plans, CIGNA breached ERISA by violating its obligations

under the SEHP Regulation.

**SUMMARY OF RELIEF SOUGHT**

7.    CIGNA breached the express terms of its health plans. Plaintiff and the Class

seek reimbursement for their unpaid benefits, as well as other appropriate equitable and legal

relief to remedy CIGNA's ongoing violations of ERISA, the New Jersey SEHP Regulation

and/or federal common law.

**JURISDICTION, VENUE AND THE PARTIES**

8.    Jurisdiction exists under the Employee Retirement Insurance Security Act of 1974

("ERISA") § 502, 29 U.S.C. § 1132 and 28 U.S.C. § 1331. Plaintiff seeks to represent all

similarly situated Members as defined in the Class definition alleged herein.

9.    Venue is appropriately established in this Court under 28 U.S.C. § 1391, because

Defendants conduct a substantial amount of business here. Venue is also appropriate in this

Court because Plaintiff David Chazen is a New Jersey resident in a health plan sponsored by a

New Jersey employer.

10.    This Complaint is filed as related to existing litigation pending in this District,

namely, *Franco v. Connecticut General Life Insurance Co.*, Case No. 07cv6039 (FSH) (PS),

*Cooper v. Aetna, Inc.*, Case No. 07cv3541 (FSH) (PS), and *Malchow v. Oxford Health Plans,*

*Inc.*, Case No. 08cv00935 (FSH)(PS).

11.     CIGNA is incorporated in Connecticut and has a principal place of business in Connecticut.

12.     Many of the Explanation of Benefit ("EOB") forms and other official communications regarding Plaintiff's health plan list various entities as the responsible entity. The entities identified are: Connecticut General Life Insurance Company, "CIGNA" and "CIGNA Health Care." Defendants are collectively referred to as "CIGNA."

## PLAINTIFF'S EXPERIENCE WITH CIGNA

13.     CIGNA failed to comply with the terms of Plaintiff's health plan by systematically making UCR determinations that reduced the amount CIGNA considered allowable without valid or compliant data to support such determinations.

14.     Chazen's policy included an ONET benefit that paid 70% of the MRC.

15.     The Schedule of benefits provided to Chazen explains that "the Maximum Reimbursable Charge is calculated at the 80th percentile of all charges made by providers of such service or supply in the geographic area." (emphasis added). The Schedule does not mention CIGNA's use of the Ingenix database to determine MRC.

16.     The definition of MRC contained in Chazen's EOC includes reference to the Ingenix database by name. CIGNA states that it uses the Ingenix database to determine "all charges made by providers of such service or supply in the geographic area where it is received." (emphasis added).

17.     Chazen was insured by CIGNA on August 2, 2006 when he suffered a complete left acromioclavicular separation. His injury required reconstructive surgery on his shoulder.

18.    Chazen chose to have a specialist perform the surgery and selected Dr. Roger G. Pollock, an orthopedist who limits his practice to shoulder surgery. Dr. Pollock is not a member of CIGNA's network.

19.    On August 14, 2006, Dr. Pollock performed reconstructive surgery on Chazen's shoulder. Dr. Pollock billed $6,500.00 for the surgery.

20.    CIGNA used the Ingenix database to determine the UCR used to pay Plaintiff's claim.

21.    CIGNA determined the allowed amount to be $3,770.00, approximately 58% of Dr. Pollock's billed charges. $2,730.00 was determined by CIGNA to be in excess of UCR. CIGNA ultimately paid only $2,061.50 for Chazen's surgery, leaving Chazen with a total liability of $4,438.50. Of this amount, Chazen has paid his provider approximately $3,730.00.

22.    On September 25, 2006, Chazen appealed CIGNA's denial of full reimbursement. Specifically, Chazen challenged the UCR determination made by CIGNA and demanded that CIGNA "disclose the source and underlying data" used to make the UCR determination for the August 14, 2008 surgery.

23.    By letter dated October 26, 2006, CIGNA denied Chazen's appeal, stating that its research showed that the claim was processed correctly. The letter describes MRC as "the 80th percentile of all charges made by providers of such service or supply in the geographic area," but does not mention the Ingenix database.

24.    On November 15, 2006, Chazen filed a second-level appeal of CIGNA denial of full reimbursement for his shoulder surgery. Included in Chazen's second appeal letter was a specific demand that CIGNA (1) supply copies of all relevant documents and information

relating to his claim; (2) identify the source for its UCR determinations; and (3) supply the underlying data relied upon to make the UCR determination on Chazen's claim.

25.    By letter dated February 1, 2007, CIGNA denied Chazen's second appeal. CIGNA did not provide any of the documentation requested. However, CIGNA did identify Ingenix as the source of its UCR determinations.

26.    In the February 1, 2007 denial letter, CIGNA again provided the same definition of MRC, but this time included a statement that it uses Ingenix to determine the reimbursement levels. CIGNA's letter also acknowledges that Ingenix data is collected from its subscribers, insurance companies (including CIGNA). CIGNA further explains that although the Ingenix data includes only four data elements (procedure code; zip code area; date of service; charge amount), it is used to determine the amount that falls within the range of fees charged by providers with similar training or experience offering similar or same services.

27.    For the reasons explained in more detail below, the Ingenix database does not meet the definition of MRC or reflect the information (such as training and experience) that CIGNA represented to Chazen was considered in making his UCR determination.

### THE INGENIX DATABASE

28.    Upon information and belief, Defendants at all relevant times relied upon and utilized the Ingenix databases (known as PHCS and MDR) to make UCR determinations. As set forth below, the Ingenix data cannot accurately or properly determine UCR or MRC, as that term is defined under the applicable contracts of insurance.

29.    In October of 1998, Ingenix, Inc. ("Ingenix"), a wholly owned subsidiary of United HealthCare Group, purchased a UCR database from the Health Insurance Association of America ("HIAA"), an insurance trade association.

7

30.    Since 1973, HIAA produced and marketed its database primarily to insurers, such as CIGNA. HIAA informed the purchasers of its data that it was not endorsing, approving or recommending the use of any of its data for any particular purpose. In fact, HIAA released its data with a disclaimer that specifically stated, in relevant part, as follows:

> The data are provided to beneficiaries [*i.e.*, insurance companies such as Defendants] for informational purposes only and the HIAA disclaims any endorsement, approval or recommendation of the data. There is neither a stated nor implied "usual and customary" charge.

31.    Once Ingenix acquired the database from HIAA, it continued to use substantially the same disclaimer which continued to disclaim use of the data for UCR. . Nevertheless, CIGNA used, and continues to use, the Ingenix data as the primary source of data upon which it bases its UCR determinations even though it cannot and should not be used for that purpose.

32.    Under the express terms of Plaintiff's health plans, CIGNA is obligated to consider various factors in making its UCR determinations.

33.    There are a number of flaws in the Ingenix data which makes it an inappropriate basis for setting UCR rates, among which are:

(a)    Collects charge data which is not representative of the actual number of procedures performed within a geographic area;

(b)    Does not collect sufficient provider-specific data to enable its users to determine whether the charges are from one provider, from several providers, or from only a minority of the providers in a geographic area;

(c)    Does not collect sufficient data to enable its users to determine whether the data reflects the charges of providers with any particular degree of expertise or specialization;

(d)    Fails to compare providers of the same or similar training and experience level and, instead, combines and averages all provider charges by procedure code without separating the charges of physicians and non-physicians;

(e)    Does not ascertain the most common charge for the same service or comparable service or supply;

(f)     Does not collect sufficient data to enable its users to determine an appropriate medical market for comparing like charges;

(g)     Fails to compare procedures that use the same or similar resources (and other costs) to the provider, but rather, indiscriminately combines all provider charges by procedure code without regard to such factors;

(h)     Fails to compare procedures of the same or similar complexity by, among other things, failing to record or account for CPT code modifiers;

(i)     Does not use an appropriate statistical methodology;

(j)     Does not properly consider charging protocols and billing practices generally accepted by the medical community or specialty groups;

(k)     Does not properly consider medical costs in setting geographic areas;

(l)     Lacks quality control, such as basic auditing, to ensure the validity, completeness, representativeness, and authenticity of the data submitted;

(m)     Is subject to pre-editing by data contributors;

(n)     Reports  charges that are systemically skewed downward;

(o)     Uses relative values and conversion factors to derive inappropriate UCR amounts;

(p)     Uses a methodology that does not comply with CIGNA's contractual definition of UCR; and

(q)     Purports to be confidential and/or proprietary, which prevents access to, and scrutiny of, the data by Members or their employers.

34.     By systematically and typically making UCR determinations without compliant and valid data to substantiate its determinations, CIGNA has breached its obligation to comply with its health plan contracts.

35.     CIGNA has, since before 1996 and through the present date, contributed claims data to Ingenix.  CIGNA's data contributions reflect improper, inaccurate and incomplete data that CIGNA knew, or should have known, would have the probable effect of skewing the data downward.

9

36.    Ingenix and CIGNA both failed to take appropriate steps to ensure that CIGNA's data contribution was complete, accurate and unbiased. Ingenix failed to take appropriate steps to ensure that other data contributors contributed complete, accurate and unbiased data to Ingenix. As a result, the Ingenix database is flawed and biased, and not an appropriate basis for UCR.

37.    By using UCR and other uniform policies relating to ONET services (including but not limited to multiple surgical, or assistant and co-surgeon policies) to reduce reimbursements in ways that are not disclosed in CIGNA's health plan with Plaintiff, CIGNA has violated, and continues to violate, its legal obligations to Plaintiff and other similarly situated individuals.

38.    CIGNA has failed to provide data and documentation regarding their ONET determinations to their Members. CIGNA's lack of disclosure violates ERISA and the federal common law. By failing to give Members an explanation of the basis for their UCR determinations, CIGNA failed to provide the "full and fair review" required by ERISA.

39.    CIGNA has violated various fiduciary and statutory and common law duties to Plaintiff by not providing them with a full and fair appeals process, the underlying data on which they purportedly relied on to deny their benefits, and to make decisions untainted by their self-interest.

40.    Plaintiff seeks unpaid benefit amounts, and legal and equitable relief for the conduct described herein, on their own behalf and on behalf of the proposed Class defined below.

## CLASS ACTION ALLEGATIONS

### The Class

41.     Plaintiff brings this action on his own behalf and on behalf of a class of all persons in the United States who are, or were, at any time during the period within six years of the date this action was filed (the "Class Period"), Members or their dependents in any health plan administered by CIGNA or as to which CIGNA is a claims fiduciary, who received medical or hospital services from an out-of-network provider and for whom CIGNA made out-of-network determinations (including but not limited to reductions based on UCR and the ) in an amount less than the billed charge for that procedure.  Class members include Members in health plans fully insured by CIGNA  (collectively, the "Class").

42.     The Class brings claims against CIGNA for the following: to recover unpaid benefits due them under the plan and to enforce and clarify their rights under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  29 C.F.R. § 2560.503-1.  Plaintiff alleges that CIGNA breached its contractual obligations to pay UCR as defined in CIGNA's health plan contracts, including by relying on a database that cannot satisfy the contractual definition of UCR.  Plaintiff and the Class allege that CIGNA is a claims fiduciary and an ERISA fiduciary, and has violated its fiduciary duties of loyalty and care under ERISA §§ 404(a)(1)(B) and (D), and 406, *inter alia*, by making out-of-network reimbursement determinations using unauthorized and undisclosed rules; by failing to provide required data and other information to Members, and by failing to apprise Members of material information regarding how CIGNA determined their out-of-network reimbursement amounts.  Plaintiff also alleges that CIGNA has violated specific ERISA provisions relating to appeals and Summary Plan Descriptions ("SPDs"), and has violated claim

procedure regulations. Finally, Plaintiff Chazen alleges that CIGNA has determined UCR in violation of the New Jersey SEHP Regulation.

**The Class Satisfies Legal Requirements**

43.    The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, CIGNA insures millions of Members nationwide. Upon information and belief, CIGNA also insures thousands of Members who are in New Jersey small employer plans. The Class contains Members of health plans administered by CIGNA or as to which CIGNA is a claims fiduciary. The precise number of members in the Class are within Defendants' custody and control. Based on reasonable estimates, the numerosity requirement of Rule 23 is easily satisfied for the Class.

44.    Common questions of law and fact exist as to all Class members and predominate over any questions affecting solely individual members of the Class, including: whether CIGNA systematically and typically breached its health plan contracts when it used Ingenix data to determine UCR; whether CIGNA underpaid out-of-network benefits for Members of the Class; whether CIGNA violated its fiduciary duties in failing to disclose material information and/or data to Members; whether CIGNA systematically and typically fails to provide a "full and fair review" to Members and their assignees who received determinations reflecting UCR; whether CIGNA systematically and typically violated ERISA or federal claims procedure regulations; whether CIGNA systematically violated the SEHP Regulation applicable to New Jersey small employer plan members; whether CIGNA mislead or withheld information from the New Jersey regulators about its payment of benefits; whether CIGNA systematically and typically fails to provide a "full and fair review" to New Jersey small employer Members and their assignees who received determinations reflecting UCR; and whether CIGNA systematically and typically

violated ERISA or federal claims procedure regulations as to New Jersey small employer plan members.

45.     The named Plaintiff's claims are typical of the claims of the Class members because, as a result of the conduct alleged herein, CIGNA has breached their statutory, plan and contractual obligations to Plaintiff and the Class through and by a uniform pattern or practices as described herein.

46.     The named Plaintiff will fairly and adequately protect the interests of the members of the Class, are committed to the vigorous prosecution of this action, have retained counsel competent and experienced in Class litigation and have no interests antagonistic to or in conflict with those of the Class.  For these reasons, the named Plaintiff is an adequate Class representative.

47.     The prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for CIGNA.

48.     A Class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Classes is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them.  Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a Class action.

49.     CIGNA failed to comply with the terms of Plaintiff's health plan by systematically and typically making UCR determinations that have the effect of underpaying

benefits in amounts less than amounts authorized by CIGNA's health plan contracts, in part by using noncompliant and invalid data to make its reimbursement determinations.

**COUNT I**

**BREACH OF PLAN PROVISIONS FOR BENEFITS AND**
**BREACH OF CONTRACT UNDER ERISA § 501(a)(1)(B)**

50.     The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

51.     Under the provisions of the health plans of Plaintiff and the Class members they represent, CIGNA administers the health plan or at least functions as a claims fiduciary.    The insurance plans at issue are governed by ERISA.

52.     CIGNA breached its plan provisions for benefits by underpaying UCR and other ONET reimbursement amounts.  CIGNA also breached its obligations to Plaintiff in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), by paying out-of-network reimbursement less than the amounts CIGNA contractually agreed to pay.  CIGNA is liable to Members  whenever CIGNA breached its health plans, including but not limited to instances where it used the Ingenix database to calculate UCR.  Thus, CIGNA is liable to Plaintiff and the Class for unpaid benefits and interest under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

53.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff and the Class are entitled to obtain unpaid benefits, and interest.

**COUNT II**

**FAILURE TO PROVIDE FULL & FAIR REVIEW**

54.     The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

14

55.    CIGNA took upon itself the role of determining appeals and grievances within the meaning of such terms under ERISA. Plaintiff and the Class are entitled to receive a "full and fair review" of all claims denied by CIGNA, and they are entitled to assert a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for CIGNA's failure to comply with these requirements.

56.    Although CIGNA was obligated to do so, it failed to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 (and the regulations promulgated thereunder) for Plaintiff, *inter alia*, by failing to disclose the "specific reasons" for benefit denials, failing to disclose data and/or the methodology it relied on in determining UCR, and failing to comply with appeal procedures imposed by ERISA and the federal common law.

57.    Plaintiff and the Class have been harmed by CIGNA's failure to provide a "full and fair review" of appeals submitted by Plaintiff and the Class under ERISA § 503, 29 U.S.C. § 1133, and by CIGNA's failure to disclose information relevant to Members' and providers' appeals in violation of ERISA and the federal common law.

**COUNT III**

**CIGNA'S FAILURE TO COMPLY**
**WITH FEDERAL CLAIMS REGULATIONS**

58.    The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

59.    CIGNA functions as an insurance company administrator within the meaning of such terms under ERISA claims procedure regulations. CIGNA must comply with all such ERISA claims procedure regulations in denying any benefit to Plaintiff and the Class. Plaintiff and the Class are entitled to assert a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for a failure to comply with these requirements by Defendants.

60.    The claims procedure regulations set forth minimum standards for claim procedures, appeals, notice to Members, and the like.  In engaging in the conduct described herein, including but not limited to, making out-of-network determinations that are inconsistent with the terms of group health plans, by failing to give required notice to Members, and failing to disclose data and/or methodology they used to determine UCR or other out-of-network reimbursements, CIGNA failed to comply with such regulations.

61.    The consequences of CIGNA's failure to comply with the regulations (as well as federal common law), are that CIGNA failed to provide reasonable claims procedures, and failed to make required disclosures.

62.    Members' administrative remedies are deemed exhausted *inter alia* by virtue of the invalid database and CIGNA's failure to provide reasonable claims procedures.  Any appeal would have been futile.

## COUNT IV

### FAILURE TO PROVIDE AN ACCURATE
### SPD AND REQUIRED DISCLOSURE

63.    The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

64.    CIGNA's disclosure obligations under ERISA, include furnishing accurate materials summarizing such group health plans, known as Summary Plan Description ("SPD") materials  under ERISA § 102, 29 U.S.C. § 1022; supplying information requested by Members or their assignees, such as Plaintiff and the Class under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

65.    CIGNA's failure to supply accurate SPDs and accurate information is redressable under ERISA § 502(c), 29 U.S.C. § 1132(c).

16

66.    CIGNA's failure to disclose material information about its UCR and other out-of-network reimbursement determinations violates federal common law, which obligates fiduciaries such as CIGNA to provide such information to Members and their assignees.

67.    Plaintiff and the Class have been proximately harmed by CIGNA's failure to provide accurate information violates the federal common law and with ERISA § 102, 29 U.S.C. § 1022 and with ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

## COUNT V

## VIOLATION OF FIDUCIARY DUTIES OF LOYALTY AND DUE CARE

68.    The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

69.    CIGNA acted and acts as a fiduciary to Plaintiff in connection with their health plans, as the term fiduciary is interpreted under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). CIGNA also acted and acts as a claims fiduciary.

70.    As a functional fiduciary under ERISA and as a claims fiduciary, CIGNA owes Members in such plans a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent fiduciary would use in the conduct of an enterprise of like character. Further, fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan. ERISA § 404(a)(1)(B) and (D), 29 U.S.C. § 1104(a)(1)(B) and (D). In failing to act prudently, and in failing to act in accordance with the documents and instruments governing the plan, CIGNA violated their fiduciary duty of care.

71.    As a fiduciary of health plans under ERISA, CIGNA owed Members a duty of loyalty, defined as an obligation to make decisions in the interest of Members, and to avoid self-

dealing or financial arrangements that benefit the fiduciary at the expense of Members. ERISA §
406, 29 U.S.C. § 1106. CIGNA cannot, for example, make benefit determinations for the
purpose of saving money at the expense of Members.

72.     CIGNA violated and violates its fiduciary duty of loyalty, *inter alia*, by making
UCR and other ONET reimbursement determinations that benefited themselves at the expense of
Members. In addition, CIGNA violates its fiduciary duty of loyalty by failing to inform
Members of flaws in the Ingenix database that preclude its appropriate use to determine UCR
reimbursement. In fact, CIGNA made representations *inter alia* about the Ingenix database that
it knew, or should have known, were untrue. As a data contributor to the Ingenix database,
CIGNA knows or should know many of the flaws that makes the Ingenix data an inappropriate
basis for UCR.

73.     In relying on a database that was noncompliant with its health plan contracts, and
invalid to make UCR determinations, CIGNA violated its fiduciary obligations to Plaintiff and
the Class.

74.     Plaintiff is entitled to assert a claim for relief for CIGNA's violation of his
fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including restitution.

## COUNT VI

## VIOLATION OF NEW JERSEY REGULATION FOR SMALL PLAN MEMBERS

75.     The allegations contained above are realleged and incorporated by reference as if
fully set forth herein.

76.     CIGNA must comply with New Jersey law and regulations for Members and their
assignees in New Jersey. For members in health plans with 50 or fewer members, CIGNA must

comply with the law and regulations governing small plans, including but not limited to N.J.A.C. § 11:21-7.13(a) ("SEHP Regulation").

77.    Under the SEHP Regulation, CIGNA must pay ONET hospital services based on actual charges, and must pay ONET medical services using the 80th percentile of the Ingenix database updated within 60 days.

78.    CIGNA cannot make reductions based on multiple surgery, assistant surgeons or co-surgeons for New Jersey small plan members.

79.    CIGNA's UCR and other ONET reimbursement determinations to Plaintiff violated the SEHP Regulation.

80.    Plaintiff Chazen, individually and on behalf of other New Jersey small plan Members, is entitled to unpaid benefits where CIGNA's payments were in derogation of either their Contracts of Insurance or the SEHP Regulation.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial for all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in his favor against CIGNA as follows:

A    Declaring that CIGNA has breached the terms of Plaintiff's health plan and those of the Class, and awarding unpaid benefits to the Plaintiff and the Class members, as well as awarding injunctive and declaratory relief to ensure enforcement of plan terms and to clarify future entitlement to benefits, including enjoining CIGNA from using the Ingenix database, or from making UCR determinations in the absence of proper or reliable data substantiating the lesser amounts;

B.    Declaring that CIGNA has failed to provide a "full and fair review" to Plaintiff and the Class under ERISA § 503, 29 U.S.C. § 1133, and awarding injunctive,

declaratory and other equitable relief to Plaintiff and the Class to ensure compliance with ERISA's requirements;

        C.       Declaring that CIGNA has violated its disclosure obligations under ERISA and the federal common law, including under § 104(b)(4), 29 U.S.C. § 1024(b)(4) and ERISA § 102, 29 U.S.C. § 1022, for which Plaintiff and the Class are entitled to injunctive, declaratory and other equitable relief;

        D.       Declaring that CIGNA has its fiduciary duties of loyalty and care to Plaintiff, and awarding appropriate relief, including restitution, declaratory and injunctive relief to Plaintiff and the Class, including removing any breaching fiduciary;

        E.       Declaring that CIGNA has violated federal claims procedures, and awarding Plaintiff and the Class declaratory and injunctive relief to remedy such violations;

        F.       Declaring that CIGNA violated ERISA's SPD requirements, and enjoining future use of noncompliant SPDs;

        G.       Awarding Plaintiff Chazen and other New Jersey small employer plan class members unpaid benefits in all instances where CIGNA failed to comply with the New Jersey SEHP Regulation, and declaratory, injunctive and equitable relief to ensure past and future compliance with New Jersey law;

        H.       Awarding Plaintiff and the Class the costs and disbursements of this action, including reasonable counsel fees, costs and expenses in amounts to be determined by the Court;

        I.       Awarding prejudgment interest; and

        J.       Granting such other and further relief as is just and proper.

Dated:  Newark, New Jersey
       August 14, 2008

Respectfully submitted,

**WILENTZ, GOLDMAN & SPITZER, P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095-0958
(732) 636-8000

Barry M. Epstein, Esq.


**POMERANTZ HAUDEK BLOCK
  GROSS MAN & GROSS LLP**
100 Park Avenue
New York, New York 10017
(212) 661-1100

D. Brian Hufford, Esq.


**SIEGEL BRILL GREUPNER DUFFY &
  FOSTER P.A.**
Wood R. Foster, Jr., Esq.
Jordan Lewis, Esq.
1300 Washington Ave S
Minneapolis, MN  55401
(612) 337-6100


**THE ALPERT LAW FIRM, P.A.**
5920 River Terrace
Tampa, Florida 33604
(813) 223-4131

*Attorneys for Plaintiff and the Putative Classes*